UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

DANIELLE FAUX

No. 3:14-cr-28 (SRU)

## RULING ON PENDING MOTIONS

Danielle Faux has been charged with health care fraud, in violation of 18 U.S.C. § 1347, obstruction of a federal audit, in violation of 18 U.S.C. § 1516, filing a false statement on a tax return, in violation of 26 U.S.C. § 7206, and aiding and abetting under 18 U.S.C. § 2. *See* Superseding Indictment (doc. # 21). On September 23, 2014, Faux filed a motion to suppress (doc. # 37), seeking suppression of evidence discovered as a result of a search of her house and business pursuant to warrants executed on December 8, 2011. In that motion, Faux also requested a *Franks* hearing, a bill of particulars, an order requiring the government to comply with its *Brady* obligations, and dismissal of the Superseding Indictment's forfeiture allegation. On January 7, 2015, I held oral argument and took that motion under advisement (doc. # 64).

On December 9, 2014, Faux filed a motion to suppress statements made during an interview with agents on December 8, 2011 (doc. # 58). On December 22, 2014, Faux filed a motion for in camera review of the grand jury minutes and dismissal of the Superseding Indictment (doc. # 59).[1] I held oral argument on January 20, 2015 and took those motions under advisement (doc. # 73). For the following reasons, the requests for a bill of particulars, an order requiring the government to comply with its *Brady* obligations, and dismissal of the Superseding Indictment's forfeiture allegation (doc. # 37), and the motion for in camera review of the grand

---

[1] Faux also filed an unredacted version of that motion (doc. # 76).

1

jury minutes and dismissal of the Superseding Indictment (doc. # 59) are DENIED.  A separate ruling will issue addressing the motion to suppress evidence and request for a *Franks* hearing (doc. # 37) and the motion to suppress statements (doc. # 58).

## I. Background[2]

Danielle Faux is a physical therapist licensed to practice in Connecticut.  Since approximately August 2007, she has owned and operated Danielle Faux PT, LLC, a physical therapy practice located in Norwalk, Connecticut.  At all times relevant to the Superseding Indictment, she was also a part owner of Achieve Rehab and Fitness, a gym located in the same building as her physical therapy practice.  Faux was a participating provider in the Medicare program and a participating provider with Anthem Blue Cross Blue Shield and Aetna health care plans (collectively, "the insurance companies").

As part of their treatment, Faux referred some of her physical therapy patients to personal trainers for personal training sessions at Achieve.  If Faux referred a client to a personal trainer, the client would either purchase a personal training "package" through Achieve or pay Faux for the sessions and have Faux pay the trainer directly.  Only physical therapy services provided by a licensed physical therapist are covered by Medicare and the insurance companies.  Personal training services provided by non-licensed personal trainers are not covered by insurance.

In or about June 2010, a personal trainer who had worked extensively with Faux (hereinafter "CW-1") voluntarily approached the government and met with agents from the Federal Bureau of Investigation ("FBI") and U.S. Department of Health and Human Services, Office of the Inspector General ("HHS-OIG").  CW-1 informed the agents that Faux was engaging in a scheme to defraud Medicare and private insurance companies by billing personal training sessions as physical therapy services provided by a licensed physical therapist.  CW-1

---

[2] The following facts are drawn from the materials submitted in connection with the pending motions.

said that the services actually were rendered in the gym area at Achieve, not in Faux's physical therapy offices, and that the services were not supervised by Faux or her staff. *See* McPhillips Aff. ¶ 20 (doc. # 37-4).

Based on the information provided by CW-1, the government commenced an investigation into Faux's business and billing practices. Its investigation led the government to believe that, among other things, Faux was fraudulently billing personal training sessions as physical therapy services. The government convened a grand jury in Bridgeport, Connecticut and presented evidence obtained in its investigation to the grand jury.

On February 19, 2014, the grand jury issued an indictment charging Faux with forty-six counts of health care fraud, in violation of 18 U.S.C. § 1347, and one count of obstruction of a federal audit, in violation of 18 U.S.C. § 1516. *See* Indictment (doc. # 1). On April 16, 2014, the grand jury returned a superseding indictment charging Faux with fifty counts of healthcare fraud, for falsely billing personal training sessions as physical therapy services on fifty separate occasions. The Superseding Indictment also charges Faux with one count of obstruction of a federal audit, for submitting false records designed to conceal the healthcare fraud and other misconduct to Medicare during a 2009 audit. The Superseding Indictment further charges Faux with three counts of filing a false statement on a tax return in violation of 26 U.S.C. § 7206, for falsely stating her income on her 2008, 2009 and 2010 Federal Form 1040.[3] Finally, the Superseding Indictment contains an allegation seeking forfeiture of certain real property located in Weston, Connecticut, and a money judgment equal to the proceeds of the health care fraud offenses. *See* Superseding Indictment (doc. # 21).

---

[3] The false statement counts will be tried separately from the healthcare fraud and obstruction of a federal audit counts. *See* Order granting Motion to Sever the Trial of Counts Fifty-Two through Fifty-Four from the Upcoming Trial (doc. # 86).

**II. Discussion**

The pending motions seek: (1) in camera inspection of the grand jury minutes and dismissal of the Superseding Indictment; and, failing that, (2) dismissal of the Superseding Indictment's forfeiture allegation; (3) a bill of particulars; and (4) an order requiring the government to comply with its *Brady* obligations. Each of those issues is discussed, in turn.

 A. <u>Motion to Inspect Grand Jury Minutes and Dismiss the Indictment</u>

Faux moves for in camera review of the grand jury minutes and dismissal of the indictment on the grounds that: (1) the prosecutor misled the grand jury by failing to present substantial exculpatory evidence; and (2) the government knowingly presented false testimony to the grand jury, including false uncharged conduct. Faux also asserts that the government's principal grand jury witness gave no independent testimony, but merely answered "yes" and "no" to the prosecutor's leading questions, rendering the prosecutor the *de facto* grand jury witness.

Grand jury proceedings carry a "presumption of regularity." *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974); *see also United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990). "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Prejudice will be found where error and/or misconduct "substantially influenced the grand jury's decision to indict," or where there is "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (citing *Mechanik*, 475 U.S. at 78 (O'Connor, J., concurring)). The burden to show circumstances warranting disclosure of grand jury materials rests on the party seeking disclosure. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979).

4

"It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51 (1992); *United States v. Calandra*, 414 U.S. 338, 343 (1974). "To further the grand jury's investigative function, the grand jury traditionally has been given "wide latitude" in its inquiries, and "prosecutors have been accorded similar leeway." *United States v. Mechanik*, 475 U.S. 64, 74 (1986) (citing *Calandra*, 414 U.S. at 343)). For example, the grand jury possesses broad powers to "compel the production of evidence or the testimony of witnesses as it considers appropriate," irrespective of whether that evidence or testimony would be admissible at trial. *Calandra*, 414 U.S. at 343. The grand jury need not consider any more evidence than is necessary "to convince it an indictment is proper." *Williams*, 504 U.S. at 53.

"[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *Calandra*, 414 U.S. at 345; *Holt v. United States*, 218 U.S. 245 (1910). "'It would run counter to the whole history of the grand jury institution' to permit an indictment to be challenged" on the ground of inadequate or incompetent evidence, and "neither justice nor a fair trial requires it." *Williams*, 504 U.S. at 54-55 (quoting *Costello v. United States*, 350 U.S. 359, 363-64 (1956) (alterations omitted)). Similarly, an indictment cannot be challenged on the grounds that the prosecutor's presentation was "incomplete" or "misleading," because "[i]t would make little sense . . . to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation." *Id.* at 54; *United States v. Howard*, 216 F.3d 1074 (2d Cir. 2000) ("A district court cannot dismiss an indictment because the prosecution presented unreliable, misleading, or incomplete evidence to the grand jury.").

5

Prosecutors are, of course, "bound by a few, clear rules" designed to "ensure the integrity of the grand jury's functions."[4] *Mechanik*, 475 U.S. at 74 (internal citations omitted); *Howard*, 216 F.3d at 1074.  But the challenges Faux raises do not fall within that category.  First, the prosecutor has no obligation to present – and the grand jury has no obligation to consider – exculpatory evidence.  *Williams*, 504 U.S. at 53.  Second, attacks on the form of questioning, the witness's basis of knowledge, and the accuracy of his or her testimony are nothing more than impermissible attacks on the reliability of the evidence.  *See, e.g.*, *Bank of Nova Scotia*, 487 U.S. at 260-61.  "[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment."  *Id.* at 261 (citing *Costello*, 350 U.S. at 363).

Faux provides several examples of "false" testimony, but those examples reflect a legitimate desire on the part of the prosecutor to streamline the process, without burdening the grand jury with excess, irrelevant information.  *See* Gov't Opp'n to Mot. to Inspect/Dismiss 8-9 (doc. # 69).[5]  Moreover, the prosecutor did not hide the omitted information from the grand jury – the grand jury was provided with transcripts of the testimony that the government's witness summarized.  In short, there is no evidence of prosecutorial misconduct that would warrant dismissal of the facially valid Superseding Indictment.  *See Bank of Nova Scotia*, 487 U.S. at 260-61.  Faux's motion to inspect the grand jury minutes and dismiss the indictment is denied.

B. Motion to Dismiss Forfeiture Allegation

Faux seeks dismissal of the Superseding Indictment's forfeiture allegation, insofar as it pertains to forfeiture of her home (the "Marital Home").  Faux asserts that the forfeiture allegation must be dismissed because there was insufficient evidence before the grand jury that

---

[4] For example, the prosecutor may not permit witnesses to remain in the grand jury room during the testimony of another witness, because such conduct could influence witness testimony.  Similarly, the prosecutor may not be present during the grand jury's deliberations, because that would destroy the independence of the grand jury.  *See Mechanik*, 475 U.S. at 74-75.  Racial discrimination in the composition of the grand jury likewise would warrant dismissal of the indictment.  *See id.* at 70.

[5] The government filed an unredacted version of its response, with relevant examples (doc. # 68).

6

the Marital Home was derived directly or indirectly from gross proceeds traceable to healthcare fraud.  Faux further contends that forfeiture of the Marital Home would violate the Excessive Fines clause of the Eighth Amendment because the approximate total of the alleged illegal proceeds is only $5,000 and the estimated value of the Marital Home is $1,500,000.

As discussed above, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *Calandra*, 414 U.S. at 343.  Regardless, dismissal of the forfeiture allegation would be premature at this juncture, because forfeiture will not be considered unless and until Faux is convicted.  *See* 18 U.S.C. § 982(a)(7); Superseding Indictment ¶ 24.  An indictment must provide the defendant with notice that the government intends to seek forfeiture of property as part of any sentence, but no forfeiture determination is made until after a verdict or finding of guilt.  *See* Fed. R. Crim. P. 32.2(a), (b)(1)(A).  If and when Faux is convicted, I will determine whether the government has "established the requisite nexus" between the property it seeks to have forfeited and the offense of conviction.  *Id.*  If necessary, I will conduct an evidentiary hearing, to ensure that my decision takes into account all relevant evidence.  *See* Fed. R. Crim. P. 32.2(b)(1)(B).  But any determination of forfeiture would be premature at this stage of the proceedings.  Thus, the motion to dismiss the forfeiture allegation is denied.

   C.  Request for a Bill of Particulars

Faux requests a bill of particulars under Fed. R. Crim P. 7(f), to clarify what she believes to be vague allegations in the Superseding Indictment. Faux essentially seeks to be informed of all of the evidence that the government plans to introduce at trial for each of the charges.

The purpose of a bill of particulars is to "provide [the] defendant with information about the details of the charge against [her] if this is necessary to the preparation of [her] defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.

1990) (citing 1 C. Wright, Federal Practice and Procedure § 129, at 434–35 (2d ed. 1982)); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam)).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which [she] is accused."  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal citations and quotation marks omitted).

A bill of particulars in not necessary "if the information sought by [the] defendant is provided in the indictment or in some acceptable alternate form."  *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (citing *Bortnovsky*, 820 F.2d at 574); *see also Walsh*, 194 F.3d at 47 (noting that a bill of particulars is not necessary "where the government has made sufficient disclosures concerning its evidence and witnesses by other means"); *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (same).  Moreover, the government is not obligated "to reveal to a defendant all of the evidence it will produce at trial."  *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004) (citing *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1987)).  "Acquisition of evidentiary detail is not the function **o**f the bill of particulars."  *Torres*, 901 F.2d at 234 (internal citations omitted); *see also Diaz*, 303 F. Supp. 2d at 89 ("A bill of particulars may not be used as a tool to get an advance view of the government's evidentiary theory.").

"Whether to grant a bill of particulars rests within the sound discretion of the district court."  *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).  "In exercising that discretion, the court must examine the totality of the information available to the defendant – through the indictment, affirmations, and general pre-trial discovery – and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted."  *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).  "The

defendant bears the burden of showing that the information requested is necessary and that [she] will be prejudiced without it so as to justify granting a bill of particulars." *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007). "So long as the defendant was adequately informed of the charges against [her] and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars," the trial court will not be found to have abused its discretion in denying a bill of particulars. *Torres*, 901 F.2d at 234 (citing *United States v. Maull*, 806 F.2d 1340, 1345-46 (8th Cir. 1986), *cert. denied*, 480 U.S. 907 (1987)).

The Superseding Indictment provides sufficient information to "advise the defendant of the specific acts of which [she] is accused." *Walsh*, 194 F.3d at 47. It tracks the statutory language of the offenses charged, describes the nature of the accusations against Faux, and identifies the specific healthcare benefit programs involved. *See Diaz*, 303 F. Supp. 2d at 89 (denying request for bill of particulars where indictment tracked statutory language of charged offenses charged and apprised defendant of nature of the accusation, thus satisfying Fed. R. Crim. P. 7(c)(1)). The healthcare fraud section contains a chart that, for each of the fifty counts of false billing, lists the patient's initials, the healthcare program billed, the billing codes used, and the dates that Faux's claims were submitted and paid. The obstruction of a federal audit count describes how Faux (and another physical therapist, at Faux's instruction) allegedly created false patient-progress records during August and September 2009, to submit to Medicare during the course of an audit. The false statement on federal tax return counts identify the approximate dates that Faux submitted the allegedly false forms and the amounts she claimed as income each year. And the forfeiture allegation, as discussed above, provides notice of the property that might be subject to forfeiture.[6]

---

[6] Fed. R. Crim. P. 32.2(a) only requires the government to provide notice of its intent to seek forfeiture and the statutory basis; the rule does not require the government to identify the specific property subject to forfeiture.

Even if the Superseding Indictment did not contain enough information, the government submits that it has already disclosed everything that Faux seeks. Faux has received thousands of pages of documents and hours of recorded conversations in discovery and the government's brief describes how those documents and conversations are responsive to Faux's requests. *See* Gov't Opp'n to Omnibus Mots. 55-56 (doc. # 42). Thus, the indictment and discovery materials are sufficient to enable Faux to prepare for trial and conduct her defense, and Faux's request for a bill of particulars is denied. *See Panza*, 750 F.2d at 1148; *Diaz*, 303 F. Supp. 2d at 89.

D. Request for Identification of Exculpatory Information

Faux asserts that the government has failed to comply with its *Brady* obligations, because the government failed to specifically identify what material in the voluminous discovery it provided was *Brady* material. Faux also seeks additional information to confirm her suspicions about the misconduct of potential government witnesses.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). That duty encompasses both exculpatory materials and information that might be used to impeach a key government witness. *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). *Brady*, however does not mandate disclosure of all material with any tendency to be exculpatory or useful for impeachment; the government "need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'" *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 675 (1985)). Undisclosed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (undisclosed evidence is material if it "could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict"). The government must disclose exculpatory and impeachment material to the defendant "in time for its effective use at trial." *Coppa*, 267 F.3d at 135.

Faux seeks categorization and identification of potentially exculpatory statements that she made to CW-1 and documents she believes that CW-1 stole from her. Generally speaking, however, "the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Ohle*, No. S3 08 CR 1109 JSR, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011) (citing *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over.")); *see also Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005), *as amended* (Mar. 8, 2005). Moreover, the contents of the statements and documents in question are matters about which Faux has personal knowledge; they are her own statements and documents. The government submits, and Faux does not dispute, that it turned over all of the relevant information. Thus, Faux has access to the necessary information and the government has fully complied with its *Brady* obligations in this regard.

With respect to Faux's request for additional information about potential government witnesses, there is no indication that the government has investigated the relevant issues and discovered any information beyond what Faux already knows. The government is not obligated to uncover exculpatory evidence at the defendant's request. *See Ohle*, 2011 WL 651849, at *4. "Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once." *Id. Brady* held

that the Government "may not properly conceal exculpatory evidence from a defendant." *Id.* (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990)). But, "[t]he Government is under no obligation to conduct a defendant's investigation or to make a defendant's case for [her]." *United States v. Garza*, 165 F.3d 312, 315 (5th Cir. 1999); *see also United States v. Kompinski*, 373 F.2d 429, 431 (2d Cir. 1967) ("[T]he government is under no obligation to prove a defendant's case . . . ."). In sum, the government has complied with its *Brady* obligations and Faux's request for additional information is denied.

### III. Conclusion

For the foregoing reasons, the motion for in camera review of the grand jury minutes and dismissal of the Superseding Indictment (doc. # 59) and the requests for a bill of particulars, an order requiring the government to comply with its *Brady* obligations, and dismissal of the Superseding Indictment's forfeiture allegation (doc. # 37) are denied.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of March 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge